**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **FELIZ RODRIGUEZ,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **3:20-cv-01019 (VLB)** |
| | : | |
| **N. McCORMICK, et al.** | : | |
| **Defendants.** | : | |

**INITIAL REVIEW ORDER AND**
<u>**ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER**</u>

Plaintiff Feliz Rodriguez, who is a pretrial detainee[1] confined at Hartford Correctional Center ("HCC") within the custody of the State of Connecticut Department of Correction ("DOC"), brought this action under 42 U.S.C. § 1983 against HCC Warden N. McCormick, Deputy Warden G. Washington, Nurse Supervisor T. Tralli, Dr. K. McCrystal, and Dr. R. Ruiz.   Second Am. Compl. [ECF No. 14].[2]   He alleges deliberate indifference in violation of his Fourteenth Amendment rights based on failure to take protective measures in response to COVID-19 and his medical treatment and claims of assault and battery, and negligence under Connecticut state law.   He seeks damages, a declaratory judgment and injunctive relief.   *Id.* at 12.   In a Notice to the court, Plaintiff has also requested a temporary restraining order to compel Defendants to provide him with timely treatment for his medical condition and to stop retaliating against him for

---

[1] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012).   The DOC website reflects that Plaintiff is unsentenced and incarcerated at HCC.   *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=433178

[2] Plaintiff is proceeding *pro se* and *in forma pauperis.*

filing this action.   Mot. [ECF No. 20].   Defendants have filed a response thereto. Obj. [ECF No. 23].

For the following reasons, the Court will permit some of Plaintiff's Fourteenth Amendment claims to proceed beyond initial review but will deny Plaintiff's request for a temporary restraining order.

I.      STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief."   *Id.*   Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.   A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).   A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard.   *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555, 557 (2007)).   Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility.   *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

## II.    ALLEGATIONS

The Court has reviewed the second amended complaint and includes the following relevant facts herein.

In February 2020, after reports about COVID-19 and the declaration of a national emergency, HCC continued its normal operations without implementing social distancing measures or providing masks and cleaning supplies.   Am. Compl. ¶¶ 7-11.   Plaintiff was extremely concerned and wrote several inmate requests to Warden McCormick and Deputy Warden Washington about the lack of social distancing, masks, and cleaning supplies.   *Id.* ¶ 11.   On February 27, Warden McCormick ordered unit supervisors to notify the inmate population that a pandemic was imminent but nothing could be done to prevent it.   *Id.* ¶ 12.

On March 1, 2020, inmates and staff began to become sick and nurses treated the cases as seasonal flu.   *Id.* ¶ 13.   Plaintiff experienced fever, muscle aches, shortness of breath, fatigue, coughing up blood, and pain in his lungs and back.   *Id.* ¶ 14.

Between March 2 through March 28, 2020, Plaintiff was seen by three nurses and told (without testing) that he did not have COVID-19.   *Id.* ¶ 15.   He received Ibuprofen and Mucinex.   *Id.*   Although Dr. McCrystal prescribed him Ibuprofen,

3

CDC orders indicate such medication should not be prescribed for COVID-19 patients. *Id.* ¶¶ 15, 40.

Rodriguez's symptoms continued for several weeks but he was ignored and untreated for his pain and suffering. *Id.* ¶ 16.

On April 4, 2020, Plaintiff had a temperature of above 101 degrees and was quarantined in the unit for COVID-19 inmates. *Id.* ¶ 17.  From April 4 to April 25, 2020, he was not allowed to shower and was only permitted fifteen minutes of exercise per day. *Id.* ¶ 18.

After April 4, 2020, Plaintiff was not permitted to see a mental health doctor or any doctor to treat his ongoing lung and back pain, breathing difficulties, fatigue, coughing up blood, and loss of smell and taste. *Id.* ¶ 19.

On April 5, 2020, Plaintiff requested that he be tested for COVID-19, but his request was denied by Drs. McCrystal and Ruiz. *Id.* ¶ 21.  On April 6, 2020, Plaintiff continued to complain about severe pain to his left lung, chronic unexplainable headaches, fatigue, coughing up blood, difficulties breathing, and loss of smell and taste. *Id.* ¶ 22.

On April 7, 2020, blood testing suggested that Plaintiff had pre-diabetes but no further action was taken. *Id.* ¶ 23.  Dr. McCrystal refused to investigate this result; Plaintiff's request for a COVID-test was again denied by Drs. McCrystal and Ruiz. *Id.*

4

On April 7, 2020, Nurse Tralli assured Plaintiff's brother (who had contacted HCC about Plaintiff's need to be tested for COVID-19) that Plaintiff had the seasonal flu.   *Id.* ¶ 24.

On April 8, 2020, Plaintiff threatened to file a lawsuit if he was not tested for COVID-19 because he was experiencing a rising fever.   *Id.* ¶ 25.   He was later tested for COVID-19 that evening and received a positive test result on April 11, 2020.   *Id.* ¶¶ 26, 27.

On April 11, 2020, Plaintiff was transferred to Northern Correctional Institution and housed with other infected inmates for a 24-hour confinement with no shower access.   *Id.* ¶ 28.

On April 25, 2020, Plaintiff was transferred back to HCC and confined in the quarantine unit for another 16 days with no access to showers or mental health services.   *Id.* ¶ 29.

On April 29, 2020, Dr. McCrystal examined Plaintiff and ordered x-rays of his lungs but denied Plaintiff pain medication and informed Plaintiff that nothing could be done to treat the pain caused by COVID-19.   *Id.* ¶ 30.

On April 30, 2020, Dr. McCrystal confirmed that there was some infection to his left lung and ordered more x-rays, but still denied Plaintiff pain medication.   *Id.* ¶ 31.   After his pain continued without treatment or pain relief, Plaintiff confirmed with Dr. Ruiz that no medication was available at HCC.   *Id.* ¶ 32.

On May 29, 2020, Dr. McCrystal noted the x-ray showed scarring to the left lower lung zone but denied Plaintiff any pain medication.   *Id.* ¶ 33.

5

On May 30, 2020, Plaintiff filed a grievance regarding his ongoing pain against all defendants.   *Id.* ¶ 36.

On June 3, 2020, Plaintiff met with Dr. Ruiz concerning his ongoing severe lung and back pain.   *Id.* ¶ 20.   Dr. Ruiz stated that nothing could be prescribed for his lung and back pain as there was no COVID-19 vaccine.   *Id.*

On June 4, 2020, Dr. McCrystal responded to his grievance but failed to order any pain medication to treat Plaintiff's severe pain.   *Id.* ¶ 37.   Dr. Ruiz responded to Plaintiff's Level 2 Grievance and assured him an "outside hospital visit."   *Id.*

On June 12, 2020, lab work results indicated a slightly abnormal thyroid test that could be related to the COVID-19 infection according to Dr. McCrystal.   *Id.* ¶ 35.

Plaintiff's inmate request forms were ignored from March 5 to April 8, 2020, and his grievances from April 10 to August 10, 2020 were either ignored or never received a response.   *Id.* ¶¶ 38-39.   Nurse Tralli only responded to one of his many request forms sent.   *Id.* ¶ 41.

Although Plaintiff has made requests for treatment by a Pulmonologist, Drs. McCrystal and Ruiz have failed to provide Plaintiff with this requested treatment. *Id.* ¶ 35.   On August 2, 2020, Dr. Ruiz agreed that Plaintiff needed a Pulmonologist consultation and prescribed him a muscle relaxer, heartburn medication, and other unknown medications.   *Id.* ¶ 51.   At that time, mental health doctors prescribed Plaintiff with Wellbutrin and other medications.   *Id.* ¶ 52.

On August 5, 2020, Plaintiff was taken to an "outside hospital" and treated for respiratory issues.   *Id.* ¶ 53.   The hospital doctor referred Plaintiff to a Pulmonologist.   *Id.*   Plaintiff is waiting to be treated by that doctor.

On August 9, 2020, Dr. Ruiz informed Plaintiff that the lab reports showed that he was suffering from pre-diabetes and other health issues.   *Id.* ¶ 55.

On August 19, 2020, lab work showed that Plaintiff's platelet count was low and his glucose was high, but no treatment or medication was provided for a pre-diabetic condition.   *Id.* ¶ 42.

Although Plaintiff still experienced pain as of August 20, 2020, Dr. McCrystal still denied him pain medication.   *Id.* ¶ 43.

Plaintiff has continued to file grievances to Warden McCormick, Deputy Warden Washington, and Nurse Tralli about denial of medical treatment, but Dr. McCrystal will still not provide him with treatment for the pain stemming from his left lung, chronic headaches, and breathing difficulties.   *Id.* ¶ 44.   Dr. Ruiz has informed Plaintiff that he also contracted COVID-19 but did not complain about lacking pain medication.   *Id.*

Plaintiff also filed numerous request forms and grievances, challenging his 24-hour confinement; however, he received no responses from McCormick, Washington, or Tralli.   *Id.* ¶ 45.

Plaintiff has been the target of retaliation due to his filing requests and grievances.   *Id.* ¶ 47.

7

### III.   DISCUSSION

Plaintiff asserts that Defendants violated his Eighth Amendment rights due to the failure to provide him medical treatment for his conditions, including timely hospital treatment and a consultation with a Pulmonologist.   *Id.* ¶¶ 57, 59, 60.   He alleges further that Defendants were deliberately indifferent to his conditions of confinement that posed an unreasonable risk of causing him a serious illness.   *Id.* ¶ 62.   He also asserts state law claims of negligence and assault and battery based on the failure to provide him treatment.   *Id.* ¶¶ 58, 59, 61.

The status of a plaintiff as either a convicted prisoner or pretrial detainee dictates whether his conditions of confinement are analyzed under the Eighth or Fourteenth Amendments.   Claims of pretrial detainees involving deliberate indifference to medical needs or unsafe conditions of confinement are considered under the Due Process Clause of the Fourteenth Amendment, but such claims brought by a sentenced prisoner are considered under the cruel and unusual punishment clause of the Eighth Amendment.   *See Darnell v. Pineiro*, 849 F.3d 17, 29-34 n.9 (2d Cir. 2017); *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 717-18 (S.D.N.Y. 2017).   As Plaintiff is an unsentenced prisoner, Plaintiff's deliberate indifference claims must satisfy the standards of the Fourteenth Amendment.

Plaintiff's allegations must establish that each defendant has personal involvement in the deprivations.   *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §

1983.'") (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). The Second Circuit has defined "personal involvement" to mean direct participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (citation omitted).   The Second Circuit has recently clarified that a plaintiff cannot rely on a "separate test of liability specific to supervisors" and "for deliberate-indifference claims . . . against a prison supervisor, the plaintiff must plead and prove that the supervisor had subjective knowledge of a substantial risk of serious harm to an inmate and disregarded it." *Tangreti v. Bachmann*, -- F.3d--, 2020 WL 7687688, at *4 (2d Cir. Dec. 28, 2020).

A.      Medical Deliberate Indifference

To establish a claim based on a denial of medical needs in violation of the Fourteenth Amendment, the pretrial detainee must establish that "the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process," and that "the officer acted with at least deliberate indifference to the challenged conditions." *Darnell*, 849 F.3d at 29.

Under the Fourteenth Amendment analysis, the "serious medical need standard contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019).   To determine whether a medical need is sufficiently serious to be cognizable as a basis for a constitutional claim for deprivation of medical care, the

court should "consider factors such as whether a reasonable doctor or patient would find the injury important and worthy of treatment, whether the medical condition significantly affects the individual's daily activities, and whether the illness or injury inflicts chronic and substantial pain." *Charles*, 925 F.3d at 86. "In most cases, the actual medical consequences that flow from the denial of care are highly relevant in determining whether the denial of treatment subjected the detainee to a significant risk of serious harm." *Id.* at 86.

Relevant to the second or "*mens rea*" factor, "the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35.   At the same time, "negligence … does not, without more, engender a constitutional claim." *Sanders v. Laplante*, No. 3:19-cv-01151 (CSH), 2019 WL 5538118, at *3 (D. Conn. Oct. 25, 2019); *see also Darnell*, 849 F.3d at 36 ("[A]ny § 1983 claim for a violation of due process requires proof of a *mens rea* greater than mere negligence.").

For purposes of ruling on this motion, the Court assumes that Plaintiff's combination of conditions, including his contraction of COVID-19, are sufficiently serious to satisfy the objective component of the Eighth Amendment analysis.

Thus, the Court considers whether he has sufficiently alleged facts to establish the *mens rea* element as to each defendant.

1.    **Nurse Supervisor Tralli**

Plaintiff alleges that Nurse Supervisor Tralli denied him testing for COVID-19 and failed to respond to his numerous inmate requests/grievances for medical assistance (the court assumes for purposes of this ruling that his inmate requests/grievances included requests for mental health treatment while in 24-hour confinement).  *See* Compl. ¶ 46.   Although Tralli's conduct in failing to recognize his COVID-19 symptoms may only amount to nonactionable malpractice or negligence, the Court construes Rodriguez's claims most liberally to raise an inference that Nurse Tralli recklessly failed to provide or facilitate Plaintiff's medical conditions that she should have known posed an excessive risk of harm to Plaintiff.   The Court will permit this claim to proceed beyond initial review against Nurse Tralli.

2.    **Dr. McCrystal and Dr. Ruiz**

Plaintiff alleges that Dr. McCrystal failed to provide him with pain relief medication, mis-prescribed him Ibuprofen when he had COVID-19 and failed to provide him timely treatment at an "outside hospital" and from an expert Pulmonologist.   It is well established that "mere disagreement over the proper treatment does not create a constitutional claim," and "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."   *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).   Based on the existing record, the Court cannot determine whether the treatment provided to Plaintiff was adequate or whether the physician

defendants recklessly failed to act with reasonable care to mitigate the risks to Plaintiff due to his contraction of COVID-19 and other medical conditions. Accordingly, Plaintiff's Fourteenth Amendment medical indifference claims may proceed against Drs. McCrystal and Ruiz.

        3.        **Warden McCormick and Deputy Warden Washington**

Plaintiff has alleged that he sent grievances to Warden McCormick and Deputy Warden Washington about the denial of medical treatment, but he has still not received any pain relief.  Because he is suing these supervisory defendants for damages, Rodriguez's allegations must establish that they have personal involvement in the deprivations.  *Wright*, 21 F.3d at 501 ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'") (quoting *Moffitt*, 950 F.2d at 885).  Although Plaintiff's allegations are sparse with regard to McCormick's and Washington's involvement, the Court considers the allegations sufficient to raise an inference that McCormick and Washington knew about the lack of medical treatment (including mental health treatment) but failed to take any remedial action.  Accordingly, the court will permit these claims of Fourteenth Amendment indifference to proceed against McCormick and Washington.

        B.        **Conditions of Confinement**

Plaintiff alleges that Defendants were deliberately indifferent to the conditions of his confinement that posed an unreasonable risk of harm to his well-being.

To set forth a due process claim under the Fourteenth Amendment for deliberate indifference to health and safety, a plaintiff must allege facts to satisfy two prongs: (1) an "objective prong" showing that the plaintiff's condition of confinement posed a unreasonable risk of serious harm to the plaintiff, and (2) a "*mens rea* prong" showing that the state actor's conduct amounts to deliberate indifference to that objectively serious risk of harm.   *See Darnell*, 849 F. 3d at 29; *Charles*, 925 F.3d at 86.

Under the objective prong, a detainee must allege that "the conditions, either alone or in combination, pose[d] an unreasonable risk of serious damage to his health ... which includes the risk of serious damage to physical and mental soundness."   *Darnell*, 849 F.3d at 30 (internal quotation marks and citations omitted).   A district court evaluates the conditions to which the detainee was exposed in the context of contemporary standards of decency and addresses, *inter alia*, whether the detainee has been deprived of basic human needs including, for example, food, clothing, shelter, medical care, and reasonable safety, or has been subjected to an unreasonable risk of serious harm to his or her future health.   *Id.* The Court does not repeat the *mens rea* element as it is already set forth above.

The Court interprets Plaintiff's claims as asserting unconstitutional conditions of confinement based on conditions concerning his lack of shower access, exercise deprivation, and failure to provide for safety measures to prevent the spread of COVID-19.

13

1.     **Lack of Showers**

Inmates have a right to sanitary living conditions and the necessary materials to maintain adequate personal hygiene.   *See Walker v. Schult,* 717 F.3d 119, 127 (2d Cir. 2013) (citing cases for the proposition that "the failure to provide prisoners with toiletries and other hygienic materials may rise to the level of a constitutional violation").   District courts in the Second Circuit have held that a temporary denial of access to a shower does not rise to the level of a serious deprivation of a human need.   *See Rogers v. Faucher*, No. 3:18-cv-01809 (JCH), 2019 WL 1083690, at *5 (D. Conn. Mar. 7, 2019) (six-day deprivation of shower use did not constitute sufficiently serious deprivation of a human need); *George v. McGinnis*, 2008 WL 4412109, at *4–5 (W.D.N.Y. Sept. 23, 2008) (deprivation of showers for thirteen days does not satisfy the objective element of an Eighth Amendment claim); *McCoy v. Goord*, 255 F. Supp. 2d 233, 260 (S.D.N.Y. 2003) (dismissing Eighth Amendment claims as insufficient under the objective test because "a two-week suspension of shower privileges does not suffice as a denial of 'basic hygienic needs'") (quoting *Cruz v. Jackson,* No. 94 Civ. 2600 (RWS), 1997 WL 45348, at *7 (S.D.N.Y. Feb. 5, 1997) (holding denial of showers for two weeks, after which inmate plaintiff was permitted only cold showers, does not state Eighth Amendment claim based on conditions of confinement)); *Waring v. Meachum*, 175 F. Supp. 2d 230, 241-42 (D. Conn. 2001) ("[T]he prohibition of showers and failure to provide a change of clothing during the seven day lockdown period does not demonstrate that plaintiffs were deprived of a minimum civilized level of life's

14

necessities.").

Construed most liberally, Plaintiff's allegations indicate that he lacked access to a shower during his quarantine confinement for at least three weeks. For purposes of initial review, the Court considers Plaintiff's allegations to be sufficient to establish an objectively serious deprivation based on lack of ability to shower while being quarantined due to a pandemic.  This time period is longer than in the cases cited and maintaining hygiene was acutely important during the pandemic.  Plaintiff has alleged that he sent numerous inmate requests and grievances challenging his 24-hour confinement to McCormick, Washington, and Tralli, without receiving any remedial responses.  Accordingly, construed most liberally, the amended complaint sufficiently raises an inference that McCormick, Washington, and Tralli acted with indifference to a known risk of harm to Plaintiff. Thus, this claim may proceed against McCormick, Washington, and Tralli for further development.

2. Exercise

An inmate's exercise is a basic human need protected by the constitution. *See Wilson v. Seiter*, 501 U.S. 294, 304-05 (1991).  The Second Circuit has recognized that the constitution requires "that prison inmates be allowed some out-of-cell exercise."  *Williams v. Greifinger*, 97 F.3d 699, 704 n.5 (2d Cir. 1996). However, prison officials may limit the right to out-of-cell exercise "where there is a valid safety exception or certain unusual circumstances."  *Id.* at 704 (holding that segregated confinement for long periods does not violate Eighth Amendment

if inmate is provided opportunity for exercise) (citations omitted).   "While courts have found that denial of all opportunity to exercise violates an inmate's constitutional rights, they have found no violation where the inmate has an opportunity for exercise, either in or outside of his cell."   *Shakur v. Sieminski,* No. 07-cv-01239 (CFD), 2009 WL 2151174, at *4–6 (D. Conn. July 15, 2009) (citing *Williams,* 97 F.3d at 704).

Here, Plaintiff has alleged that he was permitted 15 minutes of exercise per day.   Plaintiff has not alleged that he was not permitted any opportunity for exercise outdoors or could not exercise in his cell during time periods that he could not exercise outside of his cell.   Plaintiff could perform an array of exercises inside his cell including jumping jacks, sit ups, crunches, planks, squats, lunges, yoga and Pilates.   Accordingly, Plaintiff has not raised a plausible constitutional violation based on his lack of exercise while in quarantine.

3.   Safety Measures To Prevent The Spread Of COVID-19

Plaintiff has alleged that he was concerned about COVID-19 and wrote numerous requests to McCormick and Deputy Warden Washington about the lack of safety measures to prevent the spread of COVID-19 in the prison environment. It is undisputed that COVID-19 "is a highly dangerous disease that poses a significant risk of severe illness and death[.]"   *Martinez-Brooks v. Easter*, No. 3:20-cv-00569 (MPS), 2020 WL 2405350, at *21 (D. Conn. May 12, 2020).   For purposes of initial review, the Court concludes that Plaintiff has plausibly alleged that Warden McCormick and Deputy Warden Washington recklessly failed to act with

16

reasonable care to mitigate the risk of the spread of COVID-19 in the prison environment.  Accordingly, this claim may proceed beyond initial review against Warden McCormick and Deputy Warden Washington for further development.[3]

C.    Retaliation

Plaintiff alleges that the Defendants have retaliated against him for filing his many inmate and grievance requests.  Am. Compl. ¶ 47.  He maintains that Defendants have "a common practice of ignoring his requests and Grievance forms ... to hinder any available remedy" for him.  *Id.*

To prevail on a First Amendment retaliation claim, a plaintiff must establish (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.  *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019); *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (internal quotation marks omitted).

Protected speech or activity includes filing a lawsuit, an administrative complaint, or a prison grievance.  *See Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) ("It is well established that retaliation against a prisoner for pursuing a grievance violates the right to petition [the] government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983.") (internal quotation marks and citations omitted); *Booth v. Comm'r*

---

[3] This claim will not proceed against Nurse Tralli as Plaintiff has not plausibly alleged her personal involvement in this asserted constitutional violation.

*of Corr.*, No. 3:19-cv-00100 (MPS), 2019 WL 919580, at *5 (D. Conn. Feb. 25, 2019) ("Filing complaints and grievances is protected activity.") (citation omitted).

"An adverse action is defined as 'retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" *Brandon*, 938 F.3d at 40 (quoting *Davis*, 320 F.3d at 353). In order to allege causation, the inmate must state facts "suggesting that the protected conduct was a substantial or motivating factor in the [defendant's] decision to take action against [him]." *Moore v. Peters*, 92 F. Supp. 3d 109, 121 (W.D.N.Y. 2015) (quoting *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009)).

Courts treat prisoner retaliation claims "with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official— even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (citation omitted). Consequently, the Second Circuit has required that prisoner retaliation claims "be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Dolan*, 794 F.3d at 295 (internal quotations and citation omitted).

For purposes of initial review, the Plaintiff has satisfied the first two elements of his retaliation claim. However, his allegations about the causation element of the retaliation are conclusory. Here, Plaintiff's claims of Defendants' retaliation are not supported by specific facts to show that his protected activity was a substantial or motivating factor in any Defendants' decision to ignore or fail to

respond to his requests and grievances.   He has alleged in conclusory terms that he has been a target of retaliation for filing requests and grievances, and that defendants have done so to hinder the availability of his remedies.   Furthermore, Plaintiff has attached exhibits that include primarily administrative remedy filings that have received responses.   *See* Ex. A [ECF No. 14-1].   Accordingly, the Court will dismiss this claim without prejudice.

D.    **Official Capacity Claims**

Plaintiff requests injunctive relief and a declaratory judgment against Defendants in their official capacities.   Specifically, he seeks a declaration that Defendants have violated his rights under the United States Constitution; and an injunctive order for Defendants to provide him with a consultation with a Pulmonologist and implement the treatment directed by that Pulmonologist.   Am. Compl. ¶¶ 1-2.

Plaintiff has also filed a motion for a temporary restraining order to compel defendants to treat Plaintiff for his chest pains he believes to be related to his COVID-19 infection and to stop any retaliation due to filing this action.   [ECF No. 20].

As an initial matter, any claims for money damages against the defendants, who are state employees, in their official capacities are dismissed as barred by the Eleventh Amendment.   *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Plaintiff may proceed against a DOC official in his or her official capacity to the extent he alleges an ongoing constitutional violation.   *See Va. Office for Prot.*

*& Advocacy v. Stewart*, 563 U.S. 247, 254-55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)).   In *Ex parte Young*, the United States Supreme Court recognized a limited exception to the Eleventh Amendment's grant of sovereign immunity from suit to permit a plaintiff to sue a state official acting in an official capacity for prospective injunctive relief for continuing violations of federal law.   *Id.* at 155–56; *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005).   "A plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law."   *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007).   However, the exception to Eleventh Amendment immunity "does not permit judgments against state officers declaring that they violated federal law in the past."   *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993).

1.   **Declaratory Judgment**

Plaintiff's request for a declaratory judgment that Defendants have violated his constitutional rights in the past must be dismissed as barred by the Eleventh Amendment.   *See Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* . . . to claims for retrospective relief.").

2.   **Injunctive Relief**

For purposes of this initial review order, the Court concludes that Plaintiff's requests for injunctive relief seek prospective relief for the alleged ongoing Eighth Amendment violation stemming from deprivations of treatment for his breathing conditions.   However, Plaintiff is not entitled to a temporary restraining order to

compel treatment for his chest pains and to stop retaliation for filing this action. "The purpose of a temporary restraining order is to preserve an existing situation *in status quo* until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction." *Garcia v. Yonkers School Dist.*, 561 F.3d 97, 107 (2d Cir. 2009) (internal quotation marks and citations omitted).

When considering whether to issue a temporary restraining order, the Court employs the same standard used to review a request for a preliminary injunction. *See Stagliano v. Herkimer Cent. Sch. Dist.*, 151 F. Supp. 3d 264, 272 (N.D.N.Y. 2015) (citing, *inter alia*, *Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. N.Y. Shipping Ass'n*, 965 F.2d 1224, 1228 (2d Cir. 1992)). "An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010) (citation omitted). To warrant preliminary injunctive relief, the moving party must demonstrate (a) that he or she will suffer "irreparable harm" in the absence of an injunction, and (b) either (1) a "likelihood of success on the merits or (2) sufficiently serious questions going to the merits [of the case] to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting preliminary injunctive relief." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405-06 (2d Cir. 2011) (internal quotation marks omitted).

If the movant seeks a "mandatory preliminary injunction that alters the status quo by commanding some positive act," rather than a "prohibitory injunction seeking only to maintain the status quo" then the burden of proof is even

greater.   *Cacchillo*, 638 F.3d at 406 (internal quotation marks and citation omitted). Such a mandatory injunction "should issue only upon a *clear* showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief."   *Id.* (emphasis added).   A party seeking a mandatory injunction must therefore demonstrate "a substantial likelihood of success on the merits" and a showing of irreparable harm.   *See Jolly v. Coughlin,* 76 F.3d 468, 473-74 (2d Cir. 1996)*.*

In response to this Court's order, the Defendants have filed an objection to Plaintiff's request for immediate treatment, arguing that he is seeking a mandatory injunction.   Obj. [ECF No. 23].   Defendants have provided the declaration of Dr. Freston, which details the treatment Plaintiff has received in connection with his contraction of COVID-19 and his continuing complaints of shortness of breath and pains in his chest or lung area.   Freston Decl. [ECF No. 23-1 ¶¶ 7-19, 22, 23].   Dr. Freston explains that Plaintiff has the following chronic conditions: Pre-Diabetes, Depression, Headache-unspecified, Shortness of Breath, Folliculitis, and Dermatitis, and that he has been referred to a pulmonary specialist, evaluated twice, and determined to have had his post-COVID symptoms resolved with normal results for pulmonary function testing.   *Id.* ¶¶ 20-22.   Dr. Freston states that Plaintiff is continuing to receive medical treatment as necessary but he does not have any issues that require immediate medical attention.   *Id.* ¶ 23.   Plaintiff has filed no response to refute Defendants' objection to his request for immediate medical treatment.   Accordingly, upon review of the present record, the Court

concludes that Plaintiff has not shown that he has a likelihood (substantial or otherwise) for success on the merits of a claim of indifference to his medical needs based on his post-COVID symptoms, or that he will suffer irreparable harm if the Court does not grant his motion for a temporary restraining order.   Plaintiff's motion for temporary restraining order will be denied without prejudice.[4]   The present record reflects that he does not have an ongoing Eighth Amendment violation.   Accordingly, Plaintiff's request for permanent injunction is denied without prejudice.

### E.      State Law Claims[5]

Plaintiff's complaint refers to torts of assault and battery and negligence. Am. Compl. ¶¶ 58, 59, 61.

### 1.      Assault and Battery

Plaintiff alleges that Dr. Ruiz's and Dr. McCrystal's failure to provide him pain medication or treatment for his lungs and back pain constitutes assault and battery under state law.   *Id.* ¶¶ 58, 59.

In Connecticut, a civil assault is defined as "the intentional causing of

---

[4] **Plaintiff has not alleged a plausible on-going First Amendment violation retaliation claim in his complaint (and his assertion of retaliation in his motion for a temporary restraining order is wholly conclusory).   Accordingly, the Court will also deny his request for injunctive relief to stop any retaliation based on his filing this case.**

[5] **To the extent Plaintiff seeks prospective relief against Defendants in their official capacities on the basis of Connecticut state law, those claims are barred by the Eleventh Amendment under *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).   *See also Vega v. Semple*, 963 F.3d 259, 284 (2d Cir. 2020).**

imminent apprehension of harmful or offensive contact with another." *German v. Dzurenda*, No. 3:09-cv-01316 (SRU), 2011 WL 1214435, at \*22 (D. Conn. Mar. 28, 2011). "[A]n actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." *Id.* (quoting *Alteiri v. Colasso*, 168 Conn. 329, 334 n.3 (1975)).

The Physician Defendants' failure to treat or provide pain medication does not fit within the scope of civil assault or battery as defined by state law.   These claims will be dismissed as not plausible.

2.    Negligence

Plaintiff alleges that Defendants Tralli, Dr. McCrystal, and Dr. Ruiz are liable under the state law tort of negligence for failure to provide him with medical treatment.   However, any negligence claims against Defendants in their individual capacities are barred by Connecticut General Statute § 4–165, which provides: "No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment." "[W]anton, reckless, or malicious" acts go beyond gross negligence, and denote "highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." *Martin v. Brady*, 261 Conn. 372, 379 (2002) (internal quotation marks and citation omitted).   Thus, Plaintiff cannot hold the defendants, who are state

employees, "personally liable for their negligent actions performed within the scope of their employment." *Miller v. Egan*, 265 Conn. 301, 319 (2003). Accordingly, these claims will be dismissed without prejudice as not plausible.

## CONCLUSION

(1) Plaintiff's Motion for a Temporary Restraining Order, [ECF No. 20], is DENIED without prejudice.

(2) The case will proceed on Plaintiff's Fourteenth Amendment medical indifference claims against Dr. Ruiz, Dr. McCrystal, Nurse Tralli, Warden McCormick, and Deputy Warden Washington in their individual and official capacities; his Fourteenth Amendment claims based on a lack of access to showering against McCormick, Washington, and Tralli in their individual capacities; and his Fourteenth Amendment claim based on failure to implement safety measures to prevent the spread of COVID-19 against McCormick and Washington in their individual capacities.   All other claims are DISMISSED without prejudice to filing an amended complaint to correct the deficiencies of the claims as explained in this Order.

(3) The clerk shall verify the current work address of Dr. Ruiz, Dr. McCrystal, Nurse Tralli, Warden McCormick, and Deputy Warden Washington with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the amended complaint, [ECF No. 14], to them at their confirmed addresses within twenty-one (21) days of this Order, and report on the status of the waiver request on the thirty-fifth (35th) day after mailing.   If a defendant fails to

return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4) The clerk shall send a courtesy copy of the amended complaint, [ECF No. 14], and this Order to the DOC Office of Legal Affairs.

(5) The defendants shall file a response to the amended complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.   If the defendants choose to file an answer, the defendants shall admit or deny the allegations and respond to the cognizable claims recited above.   The defendants may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within six months (180 days) from the date of this Order.   Discovery requests need not be filed with the Court.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(8) All motions for summary judgment shall be filed within seven months (210 days) from the date of this Order.

(9) According to Local Civil Rule 7(a), a nonmoving party must respond to a

dispositive motion within twenty-one (21) days of the date the motion was filed.   If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) Under Local Court Rule 83.1(c)2, Plaintiff MUST notify the Court of his current address.   Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated.   He should write "PLEASE NOTE MY NEW ADDRESS" on the notice.   It is not enough to just put the new address on a letter without indicating that it is a new address.   If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address.   He should also notify the defendants or defense counsel of his new address.

(11) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.   Plaintiff is advised that the Program may be used only to file documents with the court.   Local court rules provide that discovery requests are not filed with the court.   D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on Defendants' counsel by regular mail.

_____*/s/*_____
**Vanessa L. Bryant**
**United States District Judge**

SO ORDERED at Hartford, Connecticut this 11th day of January 2021.